

FILED

2017 AUG 31  PM 4: 30

WESTERN DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
                DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

GLORIA ALMEIDA and IRMA §
QUIÑONEZ, §
    Plaintiffs, §
     §
v. §     **EP-16-CV-263-DB**
     §
BIO-MEDICAL APPLICATIONS OF §
TEXAS, INC., §
    Defendant. §

## MEMORANDUM OPINION

On this day, the Court considered Defendant Bio-Medical Applications of Texas, Inc.'s ("Defendant") "Motion for Summary Judgment on all Claims and Brief in Support" ("Motion for Summary Judgment"), filed in the above-captioned case on June 6, 2017.   On June 26, 2017, Plaintiffs Gloria Almeida ("Plaintiff Almeida") and Irma Quiñonez ("Plaintiff Quiñonez ") (collectively, "Plaintiffs") filed their Response.   On June 30, 2017, Defendant filed its Reply.   By a short order, on July 14, 2017, the Court granted Defendant's Motion for Summary Judgment.   The Court indicated that it would later issue a memorandum opinion explaining the ruling's basis.   This is the corresponding memorandum opinion.

## BACKGROUND

This is an employment retaliation case.   Plaintiff Almeida and Plaintiff Quiñonez are registered nurses who were employed by Defendant for more than two decades.   They claim that Defendant terminated their employment after they refused an assignment to train a patient to perform home hemodialysis in New Mexico.   Plaintiffs claim that they did not have the requisite experience to train the patient and that accepting the assignment would have

jeopardized the patient's safety. Plaintiffs reported this information to Defendant, and eventually Defendant terminated their employment.

Defendant hired Plaintiff Almeida in 1991 and Plaintiff Quiñonez in 1996. Def.'s Ex. B, ECF No. 18-3, at 6; Def.'s Ex. C, ECF No. 18-4, at 16; Pls.' Ex. A, ECF No. 24-2, at 3; Pls.' Ex. B, ECF No. 24-3, at 10. Their supervisor during the relevant time period was Kimberly Pope ("Ms. Pope"), the Home Therapy Program Manager. Def.'s Ex. A, ECF No. 18-2, ¶ 6, at 2; Pls.' Resp. to Def.'s Mot. Summ. J. ("Pls.' Resp."),[1] ECF No. 24, at 8.

Defendant offers different dialysis treatments to patients suffering from end stage renal disease, including in-center dialysis and home therapies. Def.'s Ex. A, ECF No. 18-2, ¶ 2, at 1. There are two types of treatment methods as well: hemodialysis and peritoneal dialysis. Def.'s Ex. A, ECF No. 18-2, ¶ 4, at 2; Pls.' Resp., ECF No. 24, at 3. Plaintiffs primarily worked with peritoneal dialysis patients, and, even if for a short period of time, were trained to do in-center hemodialysis. Def.'s Ex. B, ECF No. 18-3, at 17–18, 25, 76; Def.'s Ex. C, ECF No. 18-4, at 13–14, 18–19, 20; Pls.' Resp., ECF No. 24, at 4, 6–7. Hemodialysis requires a machine to remove and cleanse a patient's blood, as the dialysis occurs via the patient's bloodstream. Def.'s Ex. A, ECF No. 18-2, ¶ 4, at 2; Pls.' Resp., ECF No. 24, at 3. Peritoneal dialysis occurs internally, as the dialysis occurs via the lining of the patient's abdomen. Def.'s Ex. A, ECF No. 18-2, ¶ 4, at 2; Pls.' Resp., ECF No. 24, at 3. For home therapies, patients have the option of receiving peritoneal dialysis or home hemodialysis, and are trained to treat themselves independently. Def.'s Ex. A, ECF No. 18-2, ¶ 5, at 2; Pls.' Resp., ECF No. 24, at 3. A caregiver, usually a relative, is also trained so that he or she can help the patient with the home therapy. Def.'s Ex. A, ECF No. 18-2, ¶ 5, at 2; Pls.' Resp., ECF No. 24, at 3.

---

[1] Plaintiffs failed to include several pages of Plaintiff Quiñonez's deposition as exhibits to its Response. Therefore, throughout this Opinion, the Court will cite the pages from Plaintiffs' Response to Defendant's Motion for Summary Judgment that reference the depositions instead of specific pages from the depositions.

On February 23, 2016, Ms. Pope met with Plaintiffs to discuss home hemodialysis training for a patient in Las Cruces, New Mexico.   Def.'s Ex. A, ECF No. 18-2, ¶ 9, at 4; Pls.' Resp., ECF No. 24, at 8.   Plaintiffs claim that no supervisor ever asked them to train a patient in home hemodialysis before, they had no experience, and they did not know how to do so.   Pls.' Resp., ECF No. 24, at 9.   They told Ms. Pope, among other things, that they did not have the training or experience in home hemodialysis to train the patient in New Mexico and that they would not participate in training the patient in New Mexico.   Def.'s Ex. A, ECF No. 18-2, ¶ 10, at 5; Def.'s Ex. B, ECF No. 18-3, at 47–49; Def.'s Ex. C, ECF No. 18-4, at 52–53; Pls.' Resp., ECF No. 24, at 9, 13.

Ms. Pope told Plaintiffs that during the first week an experienced nurse would be available to start training the patient and Plaintiffs; after that, Plaintiffs would continue training the patient and Ms. Pope would be available as much as possible, including via telephone, throughout the entire time they were training the patient.   Def.'s Ex. A, ECF No. 18-2, ¶ 9, at 4; Def.'s Ex. B, ECF No. 18-3, at 48, 53; Def.'s Ex. C, ECF No. 18-4, at 52, 54, 70–71.   *But see* Pls.' Resp., ECF No. 24, at 10 (stating that Plaintiffs believed they were asked to train the patient independently and without supervision because only sporadic help would be available after the first week).[2]   Additionally, Plaintiffs would switch off during the first week of training in New Mexico—while one was training in New Mexico, the other would be covering the El Paso patients for both Plaintiffs.   Def.'s Ex. A, ECF No. 18-2, ¶ 9, at 4; Def.'s Ex. B, ECF No. 18-3, at 47; Pls.' Resp., ECF No. 24, at 10.   Plaintiffs and Ms. Pope agree that Plaintiffs were not qualified to independently train the patient in New Mexico.   Def.'s Ex. A, ECF No. 18-2, ¶ 11, at 5; Pls.' Resp., ECF No. 24, at 11–12 (citing Ms. Pope's deposition).   At the end of the

---

[2] In their depositions, Plaintiffs admit that although subjectively they thought they would be training the patient in New Mexico without supervision, they were told that for the rest of the training after the first week they would have support over the phone.   Def.'s Ex. B, ECF No. 18-3, at 85, 90; Def.'s Ex. C, ECF No. 18-4, at 116, 119, 155–56.

meeting, Plaintiffs stated they would not follow Ms. Pope's directive.    Def.'s Ex. A, ECF No.

18-2, ¶ 10, at 5; Pls.' Resp., ECF No. 24, at 9, 13.

On March 2, 2016, Ms. Pope issued Plaintiffs each a corrective action in the form

of a write-up.    Def.'s Ex. A, ECF No. 18-2, ¶ 12, at 5–6; Def.'s Ex. A-3, ECF No. 18-2; Def.'s

Ex. A-4, ECF No. 18-2; Pls.' Resp., ECF No. 24, at 17–18.    The write-ups included a summary

of the February 23, 2016, meeting Plaintiffs had with Ms. Pope.    Def.'s Ex. A, ECF No. 18-2,

¶ 12, at 5–6; Def.'s Ex. A-3, ECF No. 18-2; Def.'s Ex. A-4, ECF No. 18-2; Def.'s Ex. C, ECF

No. 18-4, at 66–67; Pls.' Resp., ECF No. 24, at 17–18.    Additionally, it listed eleven tasks

Plaintiffs were expected to complete, including classroom training courses and patient training in

home hemodialysis to tentatively begin on April 11, 2016.    Def.'s Ex. A, ECF No. 18-2, ¶ 12, at

5–6; Def.'s Ex. A-3, ECF No. 18-2; Def.'s Ex. A-4, ECF No. 18-2; Pls.' Resp., ECF No. 24, at

17–18.    Plaintiffs prepared rebuttals to the write-ups, again stating their concerns about not

having sufficient home hemodialysis experience to train the patient in New Mexico.    Def.'s Ex.

A, ECF No. 18-2, ¶ 13, at 6; Def.'s Ex. A-5, ECF No. 18-2; Def.'s Ex. A-6, ECF No. 18-2; Pls.'

Resp., ECF No. 24, at 19–20.

On March 17, 2016, Ms. Pope issued Plaintiffs each a second and final corrective

action in the form of a write-up because Plaintiffs had not completed or begun to complete the

tasks Ms. Pope assigned them during the first corrective action.    Def.'s Ex. A, ECF No. 18-2,

¶ 14, at 6–7; Def.'s Ex. A-7, ECF No. 18-2; Def.'s Ex. A-8, ECF No. 18-2.    *See generally* Pls.'

Resp., ECF No. 24, at 23.    These write-ups were similar to the ones issued on March 2, 2016.

Def.'s Ex. A, ECF No. 18-2, ¶ 14, at 6–7; Def.'s Ex. A-7, ECF No. 18-2; Def.'s Ex. A-8, ECF

No. 18-2; Pls.' Resp., ECF No. 24, at 23.    Defendant claims that by the time this corrective

action was issued, the patient who Plaintiffs would have worked with in New Mexico was no

longer available for training. Def.'s Ex. A, ECF No. 18-2, ¶ 15, at 7. Plaintiffs do not dispute this fact in their Response. Again, Plaintiffs prepared rebuttals to the final write-ups. Def.'s Ex. A, ECF No. 18-2, ¶ 15, at 6–7; Def.'s Ex. A-9, ECF No. 18-2; Def.'s Ex. A-10, ECF No. 18-2; Pls.' Resp., ECF No. 24, at 24.

On April 7, 2016, Ms. Pope terminated Plaintiffs' employment because they refused to complete the tasks she had assigned them in their write-ups. Def.'s Ex. A, ECF No. 18-2, ¶ 16, at 8; Pls.' Resp., ECF No. 24, at 25–26; Pls.' Ex. A-24, ECF No. 24-2, at 55 (Plaintiff Almeida termination document); Pls.' Ex. B-3, ECF No. 24-3, at 16 (Plaintiff Quiñonez termination document). Plaintiffs' employment was terminated within sixty days of their February 23, 2016, meeting with Ms. Pope, where they reported that they did not believe they had proper home hemodialysis experience to train the patient in New Mexico. Defendant claims it terminated Plaintiffs' employment due to their insubordination, while Plaintiffs claim that it terminated their employment because they refused to participate in a training that would have endangered a patient in New Mexico and would have violated applicable regulations. Def.'s Ex. A, ECF No. 18-2, ¶ 16, at 8; Pls.' Resp., ECF No. 24, at 26.

On May 10, 2016, Plaintiffs filed this case in state court. Defendant removed the case to this Court on June 30, 2016. Plaintiffs alleged one cause of action in their Original Petition: retaliation under Texas Occupations Code Sections 301.352, 301.4025(b), and 301.413. Pls.' Original Pet., ECF No. 1-4, ¶¶ 25–26, at 7.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1). "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323). Where the burden of proof lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the moving party "must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit." *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant "must identify specific evidence in the record and articulate [how] that evidence supports that party's claim." *Id.* "This burden is not satisfied with 'some metaphysical

doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 255).

## ANALYSIS

Defendant argues that summary judgment is appropriate because New Mexico law applies and Plaintiffs brought their claims under Texas law, and there is no evidence that unlawful motives played a role in Plaintiffs' termination of employment. Def.'s Mot. Summ. J., ECF No. 18, at 21–22, 28–29.[3] Plaintiffs respond that they are bound by Texas *and* New Mexico laws and regulations. Pls.' Resp., ECF No. 24, at 35–37. They also argue that there are fact issues as to whether their termination of employment was because of their refusal to follow the directives in their corrective actions or their objection to training the patient in New Mexico. *Id.* at 46–48. The Court agrees with Defendant that summary judgment is appropriate in this case for the reasons that follow.

### I.    New Mexico Law Applies

Defendant's first argument in its Motion for Summary Judgment is that New Mexico, and not Texas, laws and regulations apply in this case because Plaintiffs' safety and training claims concerned a patient in New Mexico. Def.'s Mot. Summ. J., ECF No. 18, at 21–22. Plaintiffs respond that although the patient training would have taken place in New Mexico, Plaintiffs are still subject to the licensing board and regulations of their home state:

---

[3] Defendant also argues that the training program did·not violate Texas or Centers for Medicare and Medicaid Services ("CMS") regulations, Plaintiffs were not asked to violate board rules, and Plaintiffs were not exposed to substantial risk of harm. Def.'s Mot. Summ. J., ECF No. 18, at 22–28. The Court will not address these arguments because it can resolve Defendant's Motion for Summary Judgment on the narrower grounds listed above.

Texas. Pls.' Resp., ECF No. 24, at 35. Plaintiffs argue that they are subject to the laws and regulations of New Mexico *and* Texas. *Id.* at 36. Plaintiffs and Ms. Pope testified that nurses are still subject to Texas regulations when they practice outside the state. Pls.' Resp., ECF No. 24, at 36–37.

Texas and New Mexico are members of the Nurse Licensure Compact ("NLC"). This is an agreement whereby party states recognize nursing licenses from other party states. Texas and New Mexico are both party states. The Texas Occupations Code states that "[a] nurse practicing in a party state must comply with the state practice laws of the state in which the *patient is located* at the time care is provided." Tex. Occ. Code § 304.001 (emphasis added). It further defines "state practice laws" as "a party state's laws and regulations that govern the practice of nursing, define the scope of nursing practice, and create the methods and *grounds for imposing discipline*." *Id.* (emphasis added).[4]

Plaintiffs bring a retaliation claim against Defendant for reporting or refusing to engage in practices that they reasonably believed would expose a patient in New Mexico to substantial risk of harm or would constitute grounds for reporting them to the Texas Board of Nursing. Pls.' Original Pet., ECF No. 1-4, ¶ 25, at 7. Plaintiffs assert that Texas requires nurses to have a minimum of six months of experience in home hemodialysis before instructing patients. *Id.* ¶ 14, at 5. They argue that they did not have the requisite experience and that eventually Defendant terminated their employment as a result of refusing to train the patient in New Mexico. *Id.* ¶¶ 17–23, at 5–7. Based on this information, Plaintiffs' claim centers on a training that would have taken place in New Mexico with a patient located in New Mexico.

---

[4] New Mexico has almost identical language. *See* N.M. Stat. § 61-3-24.1 ("A nurse practicing in a party state must comply with the state practice laws of the state in which the patient is located at the time care is rendered."); *see also id.* (defining "state practice laws" as "an individual party state's laws and regulations that govern the practice of nursing, define the scope of nursing practice and create the methods and grounds for imposing discipline.").

Under the NLC, Plaintiffs, although licensed in their home state of Texas, had to ensure that they were in compliance with the home hemodialysis state practice laws of New Mexico because the patient was located in New Mexico. *See* N.M. Stat. § 61-3-24.1 ("A nurse practicing in a party state must comply with the state practice laws of the *state in which the patient is located* at the time care is rendered.") (emphasis added). Any concerns Plaintiffs had regarding their relevant experience in home hemodialysis to train the patient, therefore, must be in accordance with New Mexico—not Texas—law.

In one Texas licensing hearing, the respondent held a nursing license in Maryland, but under the NLC, she was able to practice nursing in Texas as well. *Multistate Licensure Privilege Privilege Granted to Shalin Sabol*, SOAH Docket No. XXX-XX-XXX, 2006 WL 2007517, at *1 (Jan. 12, 2006) [hereinafter *Sabol*]. The Texas State Board of Nurse Examiners ("Board") alleged that the respondent used two types of drugs while employed and requested that her privilege to practice nursing in Texas should be revoked. *Id.* at *2. It filed formal charges against the respondent in Texas. *Id.* The State Office of Administrative Hearings ("SOAH") concluded that the Board had jurisdiction over this matter under Articles 3(b) and 5(c) of the NLC, which state that a party state may revoke licensing privileges under the party state's applicable laws, affecting the nurse's ability to practice in that particular party state. *Id.* at *3. The SOAH also concluded that the respondent violated sections of the Texas Health and Safety Code and that the Board should revoke her multistate nursing license. *Id.*

In another hearing, the respondent held a nursing license in Virginia, but under the NLC, she was able to practice nursing in Texas as well. *Multistate Compact Privilege Associated with of Va. Registered Nurse License No. 0001136823 Issued to Mary Golden Gravatt*, SOAH Docket No. XXX-XX-XXXX, 2009 WL 3140023, at *1 (Sept. 25, 2009)

[hereinafter *Gravatt*]. The Texas Board of Nursing ("Board") alleged that the respondent misappropriated narcotics and that her conduct would likely defraud the hospital. *Id.* at *3. The SOAH concluded that a person who is not licensed in Texas must still comply with the state practice laws of Texas if she is practicing nursing there at the time—in accordance with the NLC. *Id.* at *17. Otherwise, she is subject to disciplinary action in Texas. *Id.* The SOAH also concluded that because the Board has the authority to revoke the multistate licensing privilege of a nurse practicing in Texas, the Board should revoke the respondent's multistate nursing license for violating Texas laws. *Id.*

Plaintiffs, like the respondents in *Sabol* and *Gravatt*, would have been subject to discipline in New Mexico, even though they were licensed in Texas, if their home hemodialysis training and experience were not in compliance with New Mexico law. *See Sabol*, 2006 WL 2007517, at *1 (finding that a Maryland nurse was subject to Texas law); *Gravatt*, 2009 WL 3140023, at *1 (finding that a Virginia nurse was subject to Texas law); N.M. Stat. § 61-3-24.1; Tex. Occ. Code § 304.001 ("A nurse practicing in a party state must comply with the state practice laws of the state in which the patient is located at the time care is provided."). The Court finds that Plaintiffs' retaliation claim based on Texas law is unfounded.

## II.     Plaintiffs Fail to Establish But-For Causation

Even if Plaintiffs could bring their Texas retaliation claim against Defendant, they have failed to establish but-for causation. Defendant argues that the reason Plaintiffs were terminated from their employment is not because they refused to train the patient in New Mexico,[5] but rather because they refused to follow directives outlined in their corrective actions. Def.'s Ex. A, ECF No. 18-2, ¶ 16, at 8. Plaintiffs argue that there is a fact issue as to whether

---

[5] Refusing to train the patient in New Mexico forms the basis of Plaintiffs' "protected activity" claim. Pls.' Original Pet., ECF No. 1-4, ¶¶ 17, 21, at 5–6; Pls.' Resp, ECF No. 24, at 1, 47–48.

they were terminated from their employment because they refused to follow Ms. Pope's directives or because they objected to train the patient in New Mexico. Pls.' Resp., ECF No. 24, at 48.

Plaintiffs bring their retaliation claim against Defendant under three sections of the Texas Occupations Code. Section 301.352(a)(1), which protects a nurse's refusal to engage in unlawful conduct, states that "[a] person may not suspend, terminate, or otherwise discipline, discriminate against, or retaliate against . . . a nurse who refuses to engage in an act or omission as provided by Subsection (a-1)."[6] Tex. Occ. Code § 301.352(a)(1). Section 301.4025(b) states that

> A nurse may report to the nurse's employer . . . any situation that the nurse has reasonable cause to believe exposes a patient to substantial risk of harm as a result of a failure to provide patient care that conforms to minimum standards of acceptable and prevailing professional practice or to statutory, regulatory, or accreditation standards.

*Id.* § 301.4025(b). Section 301.413(b), which protects a nurse's report to a supervisor of certain conduct, states that "[a] person may not . . . retaliate against a person who: (1) reports in good faith under this subchapter." *Id.* § 301.413(b).

If a plaintiff is terminated from her employment within sixty days of making a report, there is a rebuttable presumption that the employer defendant retaliated against the plaintiff. *Id.* § 301.413(e). If the defendant rebuts the presumption, the plaintiff must show evidence of causation despite the defendant's rebuttal. *See generally Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 71, 81 (Tex. App—Waco 2007, no pet.) (stating that

---

[6] Section (a-1) states that "[a] nurse may refuse to engage in an act or omission relating to patient care that would constitute grounds for reporting the nurse to the board under Subchapter I, that constitutes a minor incident, or that violates this chapter or a board rule if the nurse notifies the person at the time of the refusal that the reason for refusing is that the act or omission: (1) constitutes grounds for reporting the nurse to the board; or (2) is a violation of this chapter or a rule of the board." Tex. Occ. Code § 301.352(a-1).

in a nursing home retaliation case, "[o]nce an employer submits evidence that it would have taken adverse action in the absence of the report, the rebuttable presumption disappears and the plaintiff must submit evidence of causation."); *Faulkner v. Dep't of State Health Servs.*, No. 3:07-CV-2074-D, 2009 WL 722983, at *5 (N.D. Tex. Mar. 19, 2009) ("The statutory presumption [in a Texas Whistleblower Act retaliation case] is rebutted and becomes a nullity once a defendant produces sufficient evidence to support a finding that it did not take the adverse personnel action because of the employee's report.") (internal quotation marks omitted). If the plaintiff fails to show evidence of causation after the defendant's rebuttal, the court will grant the defendant's motion for summary judgment. *See generally Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (per curiam) (holding that summary judgment was appropriate in a workers' compensation retaliation case where the plaintiff failed to produce direct or circumstantial evidence to call into question the defendant's explanation for terminating the plaintiff's employment).

Although not explicitly stated in these sections, to establish a retaliation claim under the Texas Occupations Code, a plaintiff must show that her "protected behavior was the cause of the employer's decision to . . . terminate [her] employment . . . when it did." *Castillo v. Brownsville-Valley Reg'l Med. Ctr., Inc.*, 421 S.W.3d 263, 271 (Tex. App.—Corpus Christi 2013, no pet.) (citing *Tex. Dep't of Human Servs. of the State of Tex. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995) (concluding that the but-for causation standard applies in whistleblower and similar cases)); *see Winters*, 220 S.W.3d at 81 (applying the "but-for" causation standard used in whistleblower and similar cases to a nursing home retaliation case after finding that the retaliation cause of action there, under Section 242.133 of the Texas Health and Safety Code, had almost identical language to the retaliation cause of action under Section 161.134, or retaliation

for hospital employees); *cf. Castillo*, 421 S.W.3d at 271 (equating the causation standard of Sections 301.4025, 301.352, and 301.413 with Section 161.134 of the Texas Health and Safety Code); *Finney v. VHS San Antonio Partners, LLC*, No. 5:14-CV-00840-XR, 2015 WL 4637696, at *4 (W.D. Tex. Aug. 3, 2015) (analogizing the same sections).

"[E]vidence that an adverse employment action was preceded by a superior's negative attitude toward an employee's report of illegal conduct is not enough, standing alone, to show a causal connection between the [adverse employment action and the reporting of the illegal conduct.] There must be more." *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000). Furthermore, a plaintiff's subjective belief of retaliation, without more, will not support a claim against the defendant. *Faulkner*, 2009 WL 722983, at *5 (analogizing a case under the Texas Whistleblower Act); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("[A]n employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason."), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

This means that a plaintiff must show that her employment was terminated *because* she reported to her employer behavior she believed to be unlawful. Like in other whistleblower cases, when there is no direct evidence, a plaintiff can use circumstantial evidence to show the causal connection. *Zimlich*, 29 S.W.3d at 69. Examples of circumstantial evidence include the following: knowledge of the report, a negative attitude towards the report, failure to adhere to company policies regarding the employment decision, different treatment of other similarly situated employees, and evidence that the reason the employee was terminated from her employment was false. *Id.*

Here, Plaintiffs made a report to their supervisor, Ms. Pope, on February 23, 2016, stating that they would not follow her directive to train the patient in New Mexico because they did not have the requisite experience in home hemodialysis and doing so would be a violation of Texas law. Def.'s Ex. A, ECF No. 18-2, ¶ 10, at 5; Def.'s Ex. B, ECF No. 18-3, at 47–49; Def.'s Ex. C, ECF No. 18-4, at 52–53; Pls.' Resp., ECF No. 24, at 9, 13. Therefore, Plaintiffs are protected from being retaliated against under Sections 301.352(a)(1), 301.4025(b), and 301.413(b) of the Texas Occupations Code, for refusing to engage in conduct they reasonably believed to be unlawful and reporting this conduct in good faith.[7] Tex. Occ. Code §§ 301.352(a)(1), 301.4025(b), 301.413(b). Plaintiffs then received two corrective actions, the first one for refusing to train the patient in New Mexico during the February 23, 2016, meeting, and the second one for refusing to complete or begin completing the tasks they were assigned in the first corrective action. Def.'s Ex. A, ECF No. 18-2, ¶¶ 12, 14, at 5–7; Def.'s Exs. A-3, A-7, ECF No. 18-2; Def.'s Exs. A-4, A-8, ECF No. 18-2. *See generally* Pls.' Resp., ECF No. 24, at 17–18, 23.

According to Defendant, Plaintiffs were terminated on April 7, 2016, for refusing to complete or begin completing the tasks they were assigned during the second corrective action. Def.'s Ex. A, ECF No. 18-2, ¶ 16, at 8; Pls.' Ex. A-24, ECF No. 24-2, at 55 (Plaintiff Almeida termination document); Pls.' Ex. B-3, ECF No. 24-3, at 16 (Plaintiff Quiñonez termination document). However, Plaintiffs claim they were really terminated from their

---

[7] Defendant argues that what Ms. Pope asked Plaintiffs to do—train a patient in home hemodialysis in New Mexico—was in fact lawful, so Plaintiffs were not reporting any unlawful conduct or a violation of law. Def.'s Mot. Summ. J., ECF No. 18, at 22–25. However, it is not necessary for Plaintiffs to prove that the conduct they reported was in fact unlawful, just that they, in good faith, reasonably believed it to be unlawful and reported it. *Cf. El Paso Healthcare Sys., Ltd v. Murphy*, 518 S.W.3d 412, 419 (Tex. 2017) ("[W]e conclude that [Section 161.135] does not require the plaintiff to prove that the reported conduct in fact violated the law, but instead permits the plaintiff to sue for retaliation if the plaintiff reported a violation of law in good faith."); *Finney*, 2015 WL 4637696, at *4 (analogizing Sections 301.4025, 301.352, and 301.413 of the Texas Occupations Code with Section 161.134 of the Texas Health and Safety Code).

employment for refusing to follow Ms. Pope's directive in February.    Pls.' Resp., ECF No. 24, at 26.    Plaintiffs were terminated from their employment within sixty days of making their report, so there is a rebuttable presumption that Defendant retaliated against them.    Tex. Occ. Code § 301.413(e).

Defendant has rebutted the presumption in two ways: it has provided evidence showing (1) that Plaintiffs' employment was terminated for insubordination and refusing to complete the tasks assigned during their corrective actions, and (2) that the patient in New Mexico in need of home hemodialysis training was no longer available by the time Defendant issued Plaintiffs the second corrective action.    Defendant provided Ms. Pope's declaration, where she states that "Plaintiffs continued to refuse to attend the required classes outlined in their final warnings, and it was apparent that they were not going to follow the training directives." Def.'s Ex. A, ECF No. 18-2, ¶ 16, at 8; *see also* Pls.' Ex. A-24, ECF No. 24-2, at 55 (Plaintiff Almeida termination document); Pls.' Ex. B-3, ECF No. 24-3, at 16 (Plaintiff Quiñonez termination document); *Faulkner*, 2009 WL 722983, at *4 (holding that the defendant's testimony in his affidavit supported a finding that the plaintiff was terminated from his employment for reasons other than his whistleblowing activity).    By submitting rebuttals, Plaintiffs showed their unwillingness to complete the tasks they were assigned.    Pls.' Resp., ECF No. 24, at 19–20, 24.

Defendant also provided Ms. Pope's declaration for the claim that by the time Plaintiffs received their final corrective action before termination, the New Mexico patient was no longer available for training.    Def.'s Reply to Pls.' Resp ("Def.'s Reply"), ECF No. 25, at 6 (citing Ms. Pope's declaration).    Therefore, Defendant argues, Plaintiffs' alleged concerns regarding this patient did not motivate its decision to terminate Plaintiffs and, as a result, there

was no protected activity or no evidence that this supposed protected activity was the but-for cause of their termination. *Id.* at 9. Plaintiffs failed to rebut this statement.

Because Defendant has rebutted the presumption, the burden is on Plaintiffs to show evidence of causation. *Cf. Winters*, 220 S.W.2d at 81 (applying this burden in a nursing home retaliation case); *Faulkner*, 2009 WL 722983, at *5 (applying this burden in a Texas Whistleblower Act retaliation case). There is no direct evidence that Defendant terminated Plaintiffs' employment because of their report, so Plaintiffs must show circumstantial evidence of causation. *See Zimlich*, 29 S.W.3d at 69 (allowing a plaintiff to use circumstantial evidence when there is no direct evidence). Two of the examples of circumstantial evidence listed in *Zimlich* seem to apply here: knowledge of the report and a negative attitude towards the report. *Id.* Defendant knew of Plaintiffs' report because they reported to Ms. Pope, their direct supervisor. Def.'s Ex. A, ECF No. 18-2, ¶ 10, at 5; Def.'s Ex. B, ECF No. 18-3, at 47–49; Def.'s Ex. C, ECF No. 18-4, at 52–53; Pls.' Resp., ECF No. 24, at 9, 13. Plaintiffs also claim that "[i]nstead of addressing [their] valid concerns . . . [Ms.] Pope concluded the meeting by stating that there may be corrective action." Pls.' Resp., ECF No. 24, at 12. Arguably, this could be enough evidence, along with the temporal proximity between the report and Plaintiffs' termination, to create a fact issue that would require the Court to deny Defendant's Motion for Summary Judgment. *See generally Zimlich*, 29 S.W.3d at 69 (explaining that there must be more than just a supervisor's negative attitude of an employee's report of unlawful conduct to show a causal connection).

However, it is Defendant's second piece of evidence, the unavailability of the New Mexico patient, which prevents a reasonable jury from finding a causal link between Plaintiffs' reporting of "protected activity" and their termination. Refusing to train the patient

in New Mexico formed the basis of Plaintiffs' "protected activity" claim. Pls.' Original Pet., ECF No. 1-4, ¶¶ 17, 21, at 5–6; Pls.' Resp, ECF No. 24, at 1, 47–48. When the patient was no longer available, Plaintiffs were not exempt from completing the home hemodialysis training. Plaintiffs refused to complete any of the tasks that were required of them from the first and second corrective actions, even though most of the tasks simply asked them to complete training, and only one of them could reasonably be construed as Defendant asking Plaintiffs to train the patient in New Mexico. *See* Def.'s Exhs. A-3, A-4, ECF No. 18-2 ("10) [Registered Nurse] will conduct [home hemodialysis] training tentatively scheduled to start April 11, 2016."). In fact, the second corrective action differs from the first one in that it no longer stated that there would be a tentative patient to train beginning on April 11, 2016. *Compare* Def.'s Exhs. A-3, A-4, ECF No. 18-2 ("10) [Registered Nurse] will conduct [home hemodialysis] training tentatively scheduled to start April 11, 2016."), *with* Def.'s Exhs. A-7, A-8, ECF. No. 18-2 ("9) Attend and actively participate in [home hemodialysis] trainings as scheduled in the Southern New Mexico–Texas Area.").

Defendant, in its Reply, raised this issue, essential to Plaintiffs' claim, and Plaintiffs failed to rebut it. *See Faulkner*, 2009 WL 722983, at *4 n.5 ("[B]ecause defendants have pointed to the absence of evidence that supports the cause of action, [the plaintiff] must adduce evidence that would permit a reasonable jury to find in his favor on the essential element of causation."). Despite the New Mexico patient's absence, Plaintiffs still refused to complete any of the tasks required of them, even though the one "protected activity", which formed the basis of their claim, was now removed from the equation. This is why Defendant terminated Plaintiffs' employment in April. The evidence is insufficient to raise a genuine material issue of fact, as it is clear from Defendant's evidence that Plaintiffs were terminated from their

employment for insubordination and not because they made a report.  *See* Def.'s Ex. A, ECF

No. 18-2, ¶ 16, at 8; *see Faulkner*, 2009 WL 722983, at 4–5 (finding that the defendant's

affidavit was sufficient to rebut the presumption and that the plaintiff failed to provide evidence

of a causal link); *Douglass*, 79 F.3d at 1430 (stating that a plaintiff cannot survive summary

judgment when there is proof that her employment was terminated for a nondiscriminatory

reason, even though subjectively and without more evidence, she may think she was being

retaliated against).   The Court finds that Plaintiffs failed to establish but-for causation and,

therefore, failed to establish the requirements for their retaliation claim.

## CONCLUSION

Plaintiffs brought their retaliation claim under Texas law even though the patient

training would have taken place in New Mexico.    According to the NLC, any concerns

Plaintiffs would have had with home hemodialysis training compliance should have been

brought under New Mexico law and not Texas law because it is the location of the patient at the

time of care that determines which party state laws apply.    Therefore, Plaintiffs' claims brought

under Texas law should be dismissed.

Nevertheless, even if Plaintiffs properly brought their retaliation claim under

Texas law, they failed to establish but-for causation.    Plaintiffs claim that their employment

would not have been terminated but-for reporting to Defendant the unlawful conduct—training a

New Mexico patient in home hemodialysis when they did not have the sufficient experience to

do so.    Plaintiffs' employment was terminated within sixty days of making the report, so there

is a rebuttable presumption that Defendant retaliated against them for making the report.

Defendant has rebutted the presumption by providing evidence that it terminated Plaintiffs'

employment for their insubordination and not for their reporting.    Furthermore, Defendant has

provided evidence showing that the patient in New Mexico was no longer available for home hemodialysis training by the time Plaintiffs received their second corrective action, thereby showing a break in the chain of causation. Plaintiffs failed to provide evidence of causation even after Defendant rebutted the presumption, so the Court grants summary judgment on this ground as well. The Court is able to dismiss this case on these two grounds, so it will not go into the Parties' additional claims. For these reasons, summary judgment in Defendant's favor is appropriate on all of Plaintiffs' claims.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Bio-Medical Applications of Texas, Inc.'s "Motion for Summary Judgment on all Claims and Brief in Support," filed on June 6, 2017, is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiffs Gloria Almeida and Irma Quiñonez's claims against Defendant Bio-Medical Applications of Texas, Inc. are **DISMISSED WITH PREJUDICE**.

**SIGNED** this **31st** day of **August 2017**.

DAVID BRIONES
**SENIOR UNITED STATES DISTRICT JUDGE**